**SO ORDERED.**

**SIGNED this 02 day of March, 2011.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

**IN RE:**

| | |
|---|---|
| **DAVID ALAN LEGGETT** | **CASE NO. 10-03383-8-RDD** |
| **KIMBERLY KING LEGGETT,** | **CHAPTER 7** |
| **DEBTORS** | |

**ORDER GRANTING MOTION TO DISMISS CHAPTER 7
PROCEEDING PURSUANT TO 11 U.S.C. § 707(b)(1)**

Pending before the Court is the Motion to Dismiss Chapter 7 Proceeding Pursuant to 11 U.S.C. § 707(b)(1) and (b)(3) filed on July 9, 2010 (the "Motion to Dismiss") by the Bankruptcy Administrator and the Response to the Motion to Dismiss Chapter 7 Proceeding filed on August 6, 2010 (the "Response") by David Alan Leggett and Kimberly King Leggett (the "Debtors"). A hearing was conducted in Wilson, North Carolina on January 18, 2011 to consider the Motion to Dismiss and the Response.

### BACKGROUND

On April 28, 2010, the Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). As part of their petition, the Debtors filed their Schedules, Official Form B22A - Chapter 7 Statement of Current Monthly Income & Means Test ("Form B22A"), and their Statement of Financial Affairs. Based on the Debtors' initial

calculation of their current monthly income, a presumption of abuse did not arise based on the allowed expenses and deductions set forth on their Form B22A.

On June 11, 2010, the Bankruptcy Administrator requested the Clerk of Court to issue a notice of presumed abuse. Pursuant to 11 U.S.C. § 704(b)(2), the Statement of Presumed Abuse was timely docketed on June 14, 2010.

On June 18, 2010, the Bankruptcy Administrator filed a Motion for an Order Upon the Debtor(s) to Appear for Examination which requested that the Court enter an order requiring the Debtors to appear for an examination pursuant to Fed. R. Bankr. Pro. 2004 and to provide copies of certain documents to the Bankruptcy Administrator on or before July 6, 2010 (the "2004 Examination Motion"). An Order granting the 2004 Examination Motion was docketed on June 21, 2010.

On July 9, 2010, the Bankruptcy Administrator filed the Motion to Dismiss. On August 6, 2010, the Response was filed by the Debtors. After a number of continuances, the Court conducted an evidentiary hearing on January 18, 2011.

At the conclusion of the hearing, the Court allowed the Debtors ten (10) days to file a memorandum or provide any case law in support of their position that certain expenses should be included as deductions on Form B22A.

As of the docketing of this opinion, neither party has filed any supplemental documents nor memoranda in connection with the Motion to Dismiss or the Response.

## SUMMARY OF PLEADINGS

Pursuant to the Motion to Dismiss, the Bankruptcy Administrator alleges that the Debtors have understated their current monthly income ("CMI")[1] and did not report additional income on Schedule J. Furthermore, the Bankruptcy Administrator believes that the Debtors have overstated certain deductions to their CMI.

As such, the Bankruptcy Administrator contends that the Debtors, in fact, have a positive disposable monthly income and, therefore, disputes the Debtors' assertion that the presumption of abuse does not arise in this case or that if the presumption of abuse arises, it has been rebutted.

The Bankruptcy Administrator also argues that when taken as a whole, even if the presumption of abuse does not arise, this case should be dismissed based on the totality of the circumstances of the Debtors' financial situation pursuant to Section 707(b)(3).

The Debtors dispute that they have any disposable monthly income based on their calculation of the means test as set forth on their Form B22A. As such, they argue that the Motion to Dismiss should be denied.

In general, the Debtors assert that the income amounts are not overstated and that they have properly deducted allowable expenses from their projected disposable income. Based on their calculations, they do not have any disposable monthly income and meet the means test standards

---

[1] CMI is defined by the Bankruptcy Code as the average monthly income from all sources that the debtor receives...without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month preceding the petition date if the debtor files a schedule of current income and expenditures (commonly known as Schedules I and J) and any amounts paid to the debtor on a regular basis for the household expenses of the debtor or the debtor's dependents, subject to certain limitations. 11 U.S.C. § 101(10A).

such that the presumption of abuse under Section 707(b)(2) does not arise. Therefore, the Debtors request that the Motion to Dismiss be denied.

In addition to requesting a dismissal under Section 707(b)(1), the Bankruptcy Administrator contends that even if the Court determines the calculation of the Debtors' CMI on Form B22C is accurate or the deductions taken by the Debtors are appropriate, this case should be dismissed under 11 U.S.C. § 707(b)(3) based on the totality of the circumstances. The Debtors have not made an effort to curb their lifestyle and, instead, seek to continue living in a newly constructed 3,600+ square foot home; retain a vehicle with a high lease payment; enroll their children in a number of extracurricular activities. Moving forward, based on the Schedule I as filed by the Debtors, they also intend to make monthly payments to repay the male debtor's 401K loan; and contribute $131.47 a month from the female debtor's wages to an IRA.

The Debtors disagree with the scenario presented by the Bankruptcy Administrator. They state that they have tried diligently to make ends meet and pay their creditors. In addition to the female debtor electing to have her employer pay her for her vacation leave as opposed to taking time off of work, the Debtors have refinanced a rental property in an attempt to generate funds to pay their debts. The Debtors argue they did not abuse their income through extravagant purchases, gambling, spendthrift habits or other improper and unnecessary expenses. Instead, they allege the expenses are being spent to provide for their children, who will hopefully be able to provide for themselves and benefit society as a whole.

## ANALYSIS

Section 707(b)(1) provides that the court may dismiss a case under chapter 7 or, with the consent of the debtor, convert a case to chapter 11 or 13, should the court determine that granting

4

relief would be an abuse of the provisions of chapter 7. To determine whether granting relief would be an abuse, a court should presume an abuse exists if the debtor's CMI reduced by certain amounts and multiplied by 60 is not less than the lesser of "(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or (II) $11,725.00." 11 U.S.C. § 707(b)(2)(A)(i).

The Debtors have $61,185.32 of non-priority, unsecured claims listed on Schedule F. Twenty-five percent (25%) of those claims equals $15,296.34. Therefore, if the Debtors' disposable income (CMI less allowed deductions) multiplied by 60 is not less than $11,725.00, a presumption of abuse arises under Section 707(b)(2) of the Bankruptcy Code.

In addition to a court's ability to find abuse under section 707(b)(2) of the Bankruptcy Code, even if a presumption of abuse does not arise or is rebutted by a debtor, a court has the authority to dismiss a case under section 707(b)(3).

Section 707(b)(3) provides:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in which subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider –

    (A) whether the debtor filed the petition in bad faith; or

    (B) the totality of the circumstances...of the debtor's financial situation demonstrates abuse.

BAPCPA included the judicially created totality of the circumstances test in section 707(b)(3). *In re Hartwick*, 359 B.R. 16, 20 (Bankr. D.N.H. 2007); <u>see also</u> Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 AM. BANKR. L. J. 231, 236 (2005)(reading § 707(b)(3) to allow judicial determination of debt paying ability). The changes in BAPCPA lowered the standard

5

for a court to find abuse. Pre-BAPCPA, a court was required to make a finding of "substantial abuse" of the provisions of chapter 7. However, BAPCPA specifically lowered the standard to simply "abuse." *In re Lipford*, 397 B.R. 320, 339 (Bankr. M.D.N.C. 2008).

The Bankruptcy Administrator asserts that this case should be dismissed pursuant to either Section 707(b)(1) or Section 707(b)(3) of the Bankruptcy Code based on the Debtors' abuse of the provisions of chapter 7. As the moving party, the Bankruptcy Administrator has the burden of proving abuse under Section 707. *In re Sale*, 397 B.R. 281, 284 (Bankr. M.D.N.C. 2007).

Since the Bankruptcy Administrator raises concerns with the Debtors' current monthly income and the calculation of the Debtors' monthly expenses, the Court shall address each individually.

The Debtors are married and have two dependent children.

**I.    Current Monthly Income**

The Bankruptcy Administrator contends that the Debtors failed to properly calculate CMI by understating Line 3 as to their gross monthly wages. The Debtors dispute that they have made any miscalculations of their CMI. On Line 3 of Form B22C, the Debtors list the male debtor's gross wages as $3,981.29 and the female debtor's gross wages as $4,382.08 for the October 1, 2009 through March 31, 2010 (the "CMI Period").

As to the male debtor, based on the pay advices submitted to the Bankruptcy Administrator for the CMI Period, the Bankruptcy Administrator asserts that the male debtor's gross wages were $25,717.34 resulting in a CMI of $4,286.00. The male debtor argues that the Bankruptcy Administrator does not properly calculate his CMI as he received extra income during the CMI Period that he normally would not receive. Since the opportunities to earn additional wages no

6

longer exist, the male debtor contends that the additional deposits from Federal Express that he earned during the CMI Period should not be considered in calculating his CMI.

During the CMI Period, the female debtor's employer permitted her to exchange her vacation time for wages. Based on the spreadsheet presented to the Court by the Bankruptcy Administrator, in addition to her regular wages, she received $1,011.25 between her October 8, 2009 and her October 15, 2009 paychecks. Mrs. Leggett also received an additional $649.70 in wages between her December 23, 2009 and her December 31, 2009 paychecks. The Bankruptcy Administrator asserts that based on the wages earned during the CMI Period, the female debtor received gross wages in the amount of $27,953.45 or a CMI of $4,658.00.

The Debtors do not dispute that the female debtor received additional monies from her employer but, instead, contend that these amounts are not representative of her regular monthly earnings as she received a bonus during the CMI Period and was permitted to exchange her accrued vacation for payment in the form of wages. The Debtors assert that the additional income was not part of her normal wages and that she does not anticipate these circumstances repeating themselves. Therefore, the Debtors contend that the additional amounts paid to her by her employer should not be included as part of her CMI calculation and that her CMI should be $4,382.08.

The Debtors and the Bankruptcy Administrator agree that the rental income of $475.00 a month should be included in their CMI calculation.

The Debtors' position regarding CMI is incorrect. Based on the definition of CMI, as set forth in Section 101(10A) of the Bankruptcy Code, *all* sources of income received during that six month period prior to the filing date is included in the calculation of CMI. (emphasis added). *See also In re Barbour,* Case No. 09-00553-8-RDD (Sept. 18, 2009).

7

Therefore, the Court finds that based on the evidence presented and the arguments of counsel, the male debtor's CMI is $4,286.00 and the female debtor's CMI is $4,658.00. These amounts plus the $475.00 rental income equate to a combined CMI of $9,419.00 for the Debtors. Therefore, Line 12 of Form B22C is incorrect.

## II.     Line 25 - Other Necessary Expenses: taxes

Line 25 of Form B22C lists the Debtors' monthly tax expenses as $1,910.84. This amount was calculated based on the amounts withheld from the Debtors' gross wages during the CMI Period. The Bankruptcy Administrator objects to this calculation. The Bankruptcy Administrator alleges that the Debtors have incorrectly calculated their disposable monthly income by overstating the deduction related to the Line 25 - Other Necessary Expenses: taxes.

Line 25 provides "...[e]nter the total average monthly expenses that you *actually* incur for all federal, state and local taxes..." *See* Official Form 22A (emphasis added).

This Court and the Bankruptcy Court for the Middle District of North Carolina have recognized the inherent difficulty in calculating the tax expense. *In re Barbour,* Case No. 09-00553-8-RDD (Bankr. E.D.N.C. Sept. 18, 2009)*; In re Lipford,* 397 B.R. 320 (Bankr. M.D.N.C. 2008).

Since the amount withheld by an employer may not be an accurate reflection of the state or federal tax liability that is actually owed by a debtor, the court reiterated the importance of considering whether or not the debtor was consistently receiving a refund. *In re Barbour,* Case No. 09-00553-8-RDD (Bankr. E.D.N.C. Sept. 18, 2009)*; In re Lipford,* 397 B.R. 320 (Bankr. M.D.N.C. 2008). A review of the tax returns filed by a debtor for several years prior to the filing of the bankruptcy could assist a court in determining whether an appropriate amount was deducted from Line 25 of the Form B22C.

The Bankruptcy Administrator presented copies of the Debtors' 2008 and 2009 federal tax returns to the Court.[2] The male debtor did not dispute that he and his wife received both state and federal tax refunds for the 2008 and 2009 tax years.

More specifically, the Debtors received a federal tax refund of $4,837.00 and a state tax refund of $1,940.00 for 2008. In 2009, the Debtors received $6,022.00 from the Internal Revenue Service and an additional $2,774.00 from the State of North Carolina. The Debtors contend that these tax refunds were used to pay costs associated with orthodontic and medical treatments that were necessary for their children.

The Court recognizes the pattern of refunds issued by the Internal Revenue Service and the State of North Carolina. Based on the testimony of the male debtor, the Court finds that the amounts being withheld from the Debtors' wages would exceed the annual amount due if the withholding amount was multiplied by the number of pay periods in a year. Therefore, by having too much money withheld, they are entitled to a tax refund from both the state and federal governments and the withholding amounts should not be the basis of the Line 25 calculations, even though the look-back period in this case is straddled over two tax years.

Since the Debtors have an amount withheld that exceeds the amount due to the Internal Revenue Service and the State of North Carolina, the Court finds it necessary to reduce the monthly withholding deduction of $1,910.84 shown on Line 25. The Bankruptcy Administrator offered that for the purposes of calculating whether this case is an abuse pursuant to Section 707(b), the monthly

---

[2] The Response filed by the Debtors did not specifically address the objection to the amount listed for tax withholdings and payments that was raised by the Bankruptcy Administrator. However, at the hearing, counsel for the Debtors indicated that the Debtors' CMI calculation is not overstated and that, in fact, the amount listed on their schedules is appropriate.

withholding calculation on Line 25 should be reduced by a minimum of $500.00 based on the amount of the tax refunds received by the Debtors.

The Court agrees with the Bankruptcy Administrator. Over the two years prior to the filing of the petition, the Debtors received on average $7,786.50 in refunds. When considered on a monthly basis, the Debtors have approximately $648.88 in excess tax withholdings withheld from their wages. Therefore, the Debtors must adjust the amounts shown as withholdings on their pay advices before calculating Line 25. For the purposes of determining whether this case is an abuse under Section 707, the Court accepts the offered amount and, therefore finds that Line 25 has been overstated on Form B22C by $500.00.

The Debtors are entitled to deduct $1,410.84 on Line 25. Adjusting this amount on Line 25, which allows for a deduction from CMI, will decrease the allowed deductions under Section 707(b)(2) on Line 46 and, ultimately increase the monthly disposable income available to the Debtor listed on Line 50 by $500.00.

**III.     Line 27 - Other Necessary Expenses: life insurance**

At the request of the Debtors and with no objection by the Bankruptcy Administrator, Line 27 is modified to allow a deduction in the amount of $41.40 for the monthly premium of the male debtor's term life insurance policy.

**IV.     Line 31 - Other Necessary Expenses: health care**

Line 31 of Form B22C relates to Other Necessary Expenses: health care. The instructions provide for debtors to "[e]nter the total average monthly amount that you actually expend on health care that is required for the health and welfare of yourself or your dependents, that is not reimbursed by insurance or paid by a health savings account, and that is in excess of the amount entered in Line

19B.  **Do not include payments for health insurance or health savings accounts listed in Line 34.**"[3] (emphasis in original).

On Line 31 of Form B22C, the Debtors initially deducted $35.00 for regular doctor and dental visits. As noted, the Debtors also claimed an allowed maximum deduction of $240.00 on Line 19B. At the hearing, the Debtors argued that in addition to the $35.00 listed on Line 31, they are entitled to deduct orthodontic expenses for their daughters that they omitted from Form B22C.[4] The Debtors contend they are entitled to a monthly adjustment for monies paid for orthodontic services for their two minor children. The male debtor testified on March 10, 2010 - approximately six (6) weeks before the petition date, a total of $7,333.00 was spent on orthodontic services for his daughters. He stated that the 2009 tax refunds were used to pay for these costs. The male debtor expects to spend another $5,390.00 in February 2011 for additional orthodontic services for his youngest daughter, which will be paid from his 2010 tax refunds, which he anticipates to be in the range of approximately $6,000.00. The male debtor stated that he expects to be reimbursed approximately $1,500.00 over twenty-four months from the Debtors' dental insurance and that each daughter's orthodontic services will take approximately two (2) years to complete. Therefore, the Debtors are entitled to deduct an additional monthly health care expense on Line 31 for other necessary health care expenses, as to the total average monthly amount. This amount is computed

---

[3] Line 19B provides the Debtors with a deduction based on the Internal Revenue Service ("IRS") National Standards for Out-of-Pocket health care. The Debtors deducted $240.00 on Line 19B representing the four individuals in their household at the allowed $60.00 a month allowance.

[4] In *In re Lipford,* the debtors sought to deduct anticipated dental and orthodontic expenses which were disallowed based on the debtors' inability to document such anticipated expenses. 397 B.R. 320, 336. This case is distinguishable from *Lipford*, in that the Debtors provided documentation of the orthodontic services provided to the daughters in 2009 and the anticipated cost of the 2010 services.

by the total cost of orthodontics for both children at $12,720.00, less the proposed $1,500.00 insurance reimbursement, which equals $11,220.00, divided by the estimated twenty-four (24) months of service provided. Therefore, the additional health care expenses related to the orthodontics would be $467.50 per month plus the $35.00 already claimed for a total Line 31 deduction of $502.50.

The Bankruptcy Administrator argues that the amount of Line 31 should be reduced by the amount claimed in 19B, where the Debtors claimed the national standard: health care deduction of $240.00. Line 31 requires the actual average monthly amount that is actually expended on health care that is required for the health and welfare of yourself or your dependents, that is not reimbursed by insurance or paid by a health savings account, and that is in excess of the amount entered in Line 19B. The actual amount expended monthly is $502.50, which has been reduced by the expected insurance payment, and this amount is in excess of amounts claimed in Line 19B.[5] Therefore, allowance of a deduction on Line 31 of the full amount of $502.50 is the correct computation.

Had the Bankruptcy Rules Committee, which developed Official Form 22A, intended to have the amount claimed in Line 19B subtracted from the actual amount spent, it would have more explicitly set out the requirement to subtract the amount claimed in Line 19B, as was done in Lines 20B, 23, and 24. If you had to subtract the $240.00 claimed in Line 19B, the average monthly

---

[5] *See In re Minahan,* 394 B.R. 116, 124 (Bankr. W.D.Va. 2008). Similar to our facts, the debtors in *Minahan* had health insurance and health care expenses that exceeded the national standards. *Id.* Expenses related to orthodontic services were brought into question. *Id.* The *Minahan* court recognized that health insurance [care] expenses could be deducted in addition to the national standards. *Id.* at 124. More specifically, the court found that "[b]ased on the evidence presented...as of the time of filing the health insurance expenses of $730.34 clearly being incurred at such time plus $288 from the IRS Standard for a household of four in 2008 is quite fair to the [d]ebtors as a reasonable allowance of the out-of-pocket health care expenses they were incurring at the time of filing their petition..." *Id.*

amount of the orthodontic expense combined with the $35.00 already noted would be the total allowed health care expense by itself, and would not allow for use of the national standard health care expense in Line 19B for doctor visits, required co-payments, prescription medicine, and other health care related expenses.

The Debtors are allowed a deduction of $502.50 on Line 31 of Form B22C.

**V.     Line 32 - Other Necessary Expenses: telecommunication services.**

The Bankruptcy Administrator argues that the Debtors overstate their telecommunication expenses on Line 32 of Form B22C. The Debtors deduct a $125.00 expense for this line item, which is consistent with the amount provided for on Schedule J.[6] The Bankruptcy Administrator contends that Line 32 only allows for expenses for telecommunication that is in addition to your basic services and only if such services are for the health and welfare of the family. The Debtors believe that expanded cable, cell phones, and the internet are necessary for either the education, as well as, the health and welfare of his children and family. The Bankruptcy Administrator believes that a reasonable internet expense would be $50.00, assuming that it is necessary for the health and welfare of the Debtors and their family.

The Debtors contend that a telecommunication expense of $125.00 shown on Line 32 is appropriate. The expense listed on Line 32 includes the costs for expanded cable services as well as internet charges. The Debtors argue that such channels have an educational benefit to their children and certain educational channels and programs are only offered on the expanded networks.

---

[6] The Debtors failed to provide the Court with any documentation of their purported telecommunication expenses. However, the Bankruptcy Administrator does not dispute that the Debtors made such expenditures. The Bankruptcy Administrator argues that $75.00 of such claimed expense is not permitted as a deduction on Line 32.

13

Furthermore, the male debtor testified that he and his family set aside time each week to watch and discuss a particular show. He alleged that this family time is for the health and welfare of his family as he is developing better relationships with his children and the children are learning to communicate better with their parents and to discuss what they have learned from watching a particular show with their parents.

In addition, the two minor children have cell phones. The Debtors contend the cell phones are necessary so that they can maintain contact with their children for safety purposes. Based on the Response, this expense is included on Line 32 as well.[7]

The Debtors also included the cost of their internet service on this line item. The male debtor also contends that the internet service is critical for the operation of the family as it is used for family banking and financial uses, as well as by his children for homework and other school related projects.

The cost of basic telephone service is included in the Internal Revenue Service standards for general living expenses. *In re Meade*, 420 B.R. 291, 303-4 (Bankr. W.D.Va. 2009); *In re Minahan*, 394 B.R. 116, 124 (Bankr. W.D.Va. 2008). With respect to the additional services on Line 32, the Debtors bear the burden of establishing that these expenses are necessary for their health and welfare or for the health and welfare of their dependents. *In re Meade*, 420 B.R. at 310.

With respect to the cable television services, the Court finds that the Debtors have failed to establish that cable and satellite expenses are necessary for the health and welfare of themselves or their dependents. See *In re Minahan*, 394 B.R. at 125 (disallowing cable and satellite expenses

---

[7] No specific documentation was provided to the Court to document the specific costs of the cell phones used by the daughters.

14

based on the debtors' failure to establish that such expenses were necessary for the health and welfare of their family). While it is desirable to have additional viewing options available to the family through expanded cable services, these channels do not specifically improve the health and welfare of the family and there are alternative activities that the children can participate in with the family without the cable television expense. The services attributed to this expense are a luxury the Debtors are providing to their family and not a necessity required for their health and welfare. Therefore, the expanded cable and satellite expenses are disallowed on Line 32.

No evidence was provided to the Court regarding the cost incurred by the Debtors for their internet service. The Bankruptcy Administrator stipulated that $50.00 a month was an appropriate expense for such service. In essence, the Bankruptcy Administrator, at least based on the facts of this case, agrees that such service may be necessary for the health and welfare of the Debtors or their dependents. The male debtor also testified that this service is necessary for the health and welfare of his family in that his children regularly utilize the internet for projects and other related school assignments. Based on the Bankruptcy Administrator's proposed allowance and the male debtor's testimony, the Debtors are allowed a deduction of $50.00 on Line 32 of Form B22C.

**VI.    Line 38 - Education expenses for dependent children less than 18 years old**

Line 38 provides "[e]nter the total average monthly expenses that you actually incur, not to exceed $147.92* per child, for attendance at a private or public elementary or secondary school by your dependent children less than 18 years of age. **You must provide your case trustee with documentation of your actual expenses, and you must explain why the amount claimed is reasonable and necessary and not already accounted for in the IRS Standards."** (emphasis in original). Here, the Debtors claim almost a full allowance of $295.00, $147.50 per daughter, as a

15

deduction. The male debtor testified that he and his wife spend an additional $35.00 per month on materials and projects related to the accelerated and gifted classes in which his daughters are enrolled. He also contends that the Debtors spend amounts related to his daughters' participation in school sponsored summer camps, dance lessons and/or dance classes, as well as, a local softball league, a travel softball league, a soccer league, and a volleyball league. The Court recognizes that all of these activities are beneficial for a child's self esteem and physical development and that the Debtors enrolling their daughters in such programs are well intentioned. However, such programs are not considered within the Line 38 deduction or the explicit statutory language of Section 707(b)(2)(A)(ii)(IV) of "actual expenses...to attend a private or public elementary or secondary school." These activities are not essential. Summer camp, dance lessons, softball team participation, travel softball team participation, soccer, and volleyball are electives and are extra curricular activities that are not required expenses necessary for a dependent child to attend a private or public elementary or secondary school in which the two daughters are enrolled.

Therefore, the Debtors are allowed a Line 38 expense deduction of $70.00 related to the amounts expended on the projects for the accelerated and gifted classes.

## CONCLUSION

Based on the findings above, the Debtors' Form B22C shall provide a Line 12 CMI of $9,419.00. This amount should also be the amount included on Line 18 as the CMI to be used in determining whether this case is an abuse under Section 707(b).

Pursuant to amounts set forth above, the deductions allowed under Part V: Subpart A - Deductions under Standards of Internal Revenue Service include:

Line 25 - $1,410.84 (reduction of $500.00);

   Line 27 - $41.40 (increase of $41.40);

   Line 31 - $502.50 (increase of $467.50); and

   Line 32 - $50.00 (reduction of $75.00).

 The net result of these changes allows the Debtors a total Line 33 deduction of $5,537.84 for expenses allowed under Part V: Subpart A - Deductions under Standards of Internal Revenue Service.

 Pursuant to the amounts set forth above, Line 38 under Part V: Subpart B - Additional Living Expense Deductions shall be adjusted to $70.00 as opposed to the $295.00 expense listed by the Debtors. Therefore, the total Line 41 deduction allowed for Part V: Subpart B - Additional Living Expense Deductions is $264.45.

 Part V: Subpart C - Deductions for Debt Payment has not been questioned by the Bankruptcy Administrator. Therefore, the Debtors are entitled to a deduction of $2,677.69 on Line 46 on Form B22C.

 The combined total of the Debtors' allowed deductions are $8,479.98. This amount deducted from the combined CMI of $9,419.00 results in a balance of $939.02. Pursuant to Section 707(b)(2)(A)(i), the presumption of abuse arises if the $939.02 times sixty (60), which equals $56,341.20, is not less than $11,725.00. Since this amount exceeds the $11,725.00 figure set forth in the Bankruptcy Code, there is a presumption of abuse.

 The presumption of abuse may only be overcome pursuant to Section 707(b)(2)(B)(i) and may only be rebutted by showing special circumstances such as a call or order to active duty in the Armed Forces or a serious medical condition. The male debtor testified his wife[8] had been

---

[8] Mrs. Leggett did not attend the hearing.

diagnosed with Graves disease, which requires future doctor visits and surgery. However, the Debtors failed to provide the Court with documentation or detailed explanation as required under subsection (ii) of Section 707(b)(2)(B).

Therefore, based on the finding of a presumption of abuse pursuant to Section 707(b)(1) where the Debtors' 60-month disposable income of $56,341.20 exceeds $11,725.00[9] and the failure of the Debtors to meet their burden of demonstrating that special circumstances exist to rebut the presumption of abuse set forth in Section 707(b)(2)(B), the Motion to Dismiss is **GRANTED**. However, the Debtors shall have twenty (20) days from the entry of this order to convert the case to chapter 13. Should the Debtors fail to convert within this time frame, the case is **DISMISSED** pursuant to Section 707(b)(1).

**SO ORDERED.**

**END OF DOCUMENT**

---

[9] Since the presumption of abuse has been established under Section 707(b)(2) and the Debtors have failed to rebut the presumption, the facts in this case establish abuse under Section 707(b)(1) and the Court need not consider whether abuse exists under Section 707(b)(3).